UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DOMINICA THOMPSON, YOLANDA
OLINGER, VERONICA NOESKE,
DEMEAN DANIELS, NATASHA CHARLES,
and BARBARA BULLY

**COMPLAINT**

      Plaintiffs

Case No. _____,

vs.

WAL-MART STORES, INC., WAL-MART STORES
EAST I, LIMITED PARTNERSHIP, and
JOHN MOTZ

      Defendants.

## JURISDICTION AND VENUE

1.    This is an action under the Civil Rights Act of 1866, 42 U.S.C. Sect. 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981A, seeking to redress unlawful employment practices on the basis of race and to remedy Wal-Mart's interference with the rights of Plaintiffs to enter into and enforce contracts. Plaintiffs further allege that at the level of the region in which Wal-Mart Store 3496 is located, the Defendants have engaged in a general and pervasive corporate policy and pattern and practice of retaliation against employees who oppose racially discriminatory conduct by their supervisors. Wal-Mart's conduct as complained of herein constitutes intentional race discrimination.

2.    Jurisdiction over this action is conferred on the Court by 28 U.S.C. §§ 1331, 1337, 1343(3), 2201;

3.    Venue is proper because the violations of the Plaintiffs' civil rights complained of herein were committed and continue to occur in the City of Milwaukee, Wisconsin, within the

1

Eastern District of Wisconsin;

## PARTIES

4. The Plaintiff, Dominica Thompson, is an African American citizen of the United States and a resident of the State of Wisconsin. At all times relevant to the deprivation of rights complained of herein, the Plaintiff resided within the City of Milwaukee, Wisconsin and was an employee of the Defendants;

5. The Plaintiff, Yolanda Olinger, is an African American citizen of the United States and a resident of the State of Wisconsin. At all times relevant to the deprivation of rights complained of herein, the Plaintiff resided within the City of Milwaukee, Wisconsin and was an employee of the corporate Defendants;

6. The Plaintiff, Veronica Noeske, is an African American citizen of the United States and a resident of the State of Wisconsin. At all times relevant to the deprivation of rights complained of herein, the Plaintiff resided within the City of Milwaukee, Wisconsin and was an employee of the corporate Defendants;

7. The Plaintiff, Demean Daniels, is an African American citizen of the United States and a resident of the State of Wisconsin. At all times relevant to the deprivation of rights complained of herein, the Plaintiff resided within the City of Milwaukee, Wisconsin and was an employee of the corporate Defendants;

8. The Plaintiff, Natasha Charles, is an African American citizen of the United States and a resident of the State of Wisconsin. At all times relevant to the deprivation of rights complained of herein, the Plaintiff resided within the City of Milwaukee, Wisconsin and was an employee of the corporate Defendants;

9. The Plaintiff, Barbara Bully, is an African American citizen of the United States and a resident of the State of Wisconsin. At all times relevant to the deprivation of rights complained of herein, the Plaintiff resided within the City of Milwaukee, Wisconsin and was an employee of the corporate Defendants;

10. The Defendant Wal-Mart Stores, Inc., is a Delaware corporation, with its principal place of business in Bentonville, Arkansas, and is doing business in the State of Wisconsin and the City of Milwaukee, including at the location of Wal-Mart Store 3496, which is located at 5825 West Hope Avenue, Milwaukee, Wisconsin 53216.

11. The Defendant Wal-Mart Stores East I, Limited Partnership, is a Delaware corporation, with its principal place of business in Bentonville, Arkansas, and is doing business in the State of Wisconsin and the City of Milwaukee, including at the location of Wal-Mart Store 3496, which is located at 5825 West Hope Avenue, Milwaukee, Wisconsin 53216. The Defendants Wal-Mart Stores, Inc., and Wal-Mart Stores East I, Limited Partnership, shall hereafter be referred to collectively as "Wal-Mart."

12. The Defendant John Motz, at all times relevant to the deprivation of rights complained of herein, was the Store Manager of Wal-Mart Store Number 3496, located at 5825 West Hope Ave., in the City of Milwaukee. John Motz is Caucasian and is named as a defendant with respect to each of the Plaintiffs' 42 U.S.C. § 1981 claims.

## BACKGROUND

13. Wal-Mart Store 3496 is located in a predominately African-American neighborhood of Milwaukee, Wisconsin.

14. Prior to June 16, 2008, each of the Plaintiffs had numerous personal experiences

3

interacting with the Defendant John Motz and as a result of those experiences had a reasonable basis to form the opinion that Mr. Motz harbored racial animus towards African Americans. For example, on the first occasion that the Plaintiff Barbara Bully met Mr. Motz she attempted to shake his hand in conformity with the norms of common courtesy. Mr. Motz glanced at her extended hand and without comment refused to engage in a handshake. On another occasion during an inventory in the spring of 2008, Mr. Motz was writing on a pad of paper when his pen stopped working. Ms. Bully offered Mr. Motz her pen. Mr. Motz stared at the extended pen for a few seconds and then turned and asked the Assistant Manager for his pen. The Assistant manager was not an African American. On both occasions, Ms. Bully reasonably perceived the actions and demeanor of Mr. Motz to be racially motivated.

15. Prior to June 16, 2008, each of the Plaintiffs had observed John Motz treat African American employees and customers with less respect and common courtesy than he treated non-African American employees and customers. For example, the Plaintff Dominica Thompson observed an African American customer attempt to speak to Mr. Motz as he was leaving the store. Mr. Motz simply looked at the customer and rudely refused to acknowledge her presence in a manner that she perceived to be motivated by racial animus.

16. On June 16, 2008, a customer at Wal-Mart Store 3496 alleged that she overheard the store manager, John Motz state: " I hate working with niggers." The customer complained about the overheard statement to several Wal-Mart employees and other customers.

17. Also on June 16, 2008, a customer named Sandra Thomas left a message on the voicemail system of the Wal-Mart marketing department stating that she had overheard a Caucasian manager make the racially derogatory statement contained in paragraph 16 and

requested that Wal-Mart conduct an investigation

18. The Plaintiff Veronica Noeske did not work on June 16, 2008. On June 17, 2008, Ms. Noeske was confronted by a customer who aggressively asked her in inappropriate language if this was the store with the racist store manager. The customer irately informed Ms. Noeske that he was going to "bring in people to tear the place up." Ms. Noeske unsuccessfully attempted to page security in order to remove the customer. After the customer left, Ms. Noeske spoke with a manager and was informed of allegations contained in paragraphs 16 and 17 above. Ms. Noeske asked Mr. Motz if she could speak with him, however, he ignored her request.

19. On June 17, 2008, the Plaintiffs Demean Daniels, Natasha Charles, Barbara Bully, Yolanda Olinger, and Dominica Thompson attended an early morning staff meeting with other employees which led by John Motz. At the end of the meeting, the Plaintiff Dominica Thompson asked Mr. Motz what he had to say about the racial slur described in paragraphs 16 and 17 above. Mr. Motz turned visibly red in the face and refused to respond. Dominica Thompson's question to Mr. Motz was heard by all employees who were present in the staff meeting.

20. On June 17, 2008, after the staff meeting, Plaintiffs Demean Daniels, Natasha Charles and Barbara Bully sent a joint e-mail to the President of Wal-Mart Stores, Inc., complaining that a customer had overheard the store manager make the racially derogatory statement contained in paragraph 15 and requested that Wal-Mart conduct an investigation.

21. Also on June 17, 2008, Plaintiffs Veronica Noeske, Yolanda Olinger and Dominica Thompson sent e-mails o the President of Wal-Mart Stores, Inc., complaining that a customer had overheard the store manager make the racially derogatory statement contained in

paragraph 16, expressing concern about the racial environment in that workplace and requested that Wal-Mart conduct an investigation.

22. Also on June 17, 2008, Market Manager Conrad Schaefer came to Store 3496 as a result of the controversy related to the allegations in paragraphs 16 and 17 above. Concern about the statements described in paragraphs 16 and 17 above spread throughout the store among both employees and customers.

23. On July 1, 2008, the Plaintiff Veronica Noeske, applied for a transfer to the Wal-Mart store in Pewaukee because she perceived the work environment at Store 3496 to be racially hostile.

24. On July 9, 2008, the Plaintiff Veronica Noeske received a first level discipline known as a "verbal coaching" on false and pretextual grounds related to productivity. The verbal coaching was imposed by Managers Roger Bradley and Pearl Perry. The verbal coaching was instigated by the Defendant John Motz, Conrad Schaefer, Andrew Hunter, and other managers from the departments of Market Asset Protection and Human Resources and was motivated by retaliatory animus.

25. On July 9, 2008, the Plaintiff Veronica Noeske sent an e-mail to human resources manager Andrew Hunter complaining that the verbal coaching issued to her on July 8, 2008, was factually unjustified and was in retaliation by "upper management" for the complaint she had sent to the President of Wal-Mart on June 17, 2008.

26. The Defendants ignored Veronica Noeske's e-mails described in paragraphs 21 and paragraph 25, as well as her application for a transfer and made no effort to investigate her complaints.

6

27. The Defendants did not adequately investigate the allegations contained in paragraphs 16 through 21. The Defendant assigned its departments of Market Asset Protection and Human Resources to interview various witnesses which did not include the Plaintiffs Veronica Noeske, Dominica Thompson, Natasha Charles or Barbara Bully.

28. On September 17, 2008, under the supervision of the Defendant's Market Asset Protection Department, surreptitious video surveillance was conducted of the Plaintiff Dominica Thompson. While under the video surveillance Ms. Thompson was seen receiving an emergency cell phone call from her son who has asthma.

29. On September 25, 2008, the Defendants terminated the employment of the Plaintiff Dominica Thompson in retaliation for the protected activity described in paragraphs 16 through 21 above. The Defendant asserted the receipt of the emergency cell phone call as a pretext to justify the termination. Upon information and belief, other employees, similarly situated, who have not engaged in protected oppositional conduct have been observed by surreptitious video surveillance receiving calls on their personal cell phones and have not been subjected to coaching or other forms of work place discipline.

30. At the time of her termination, Dominica Thompson's employment performance satisfied the legitimate work related expectations of the Defendants and her regularly conducted performance evaluations indicated that she met or exceeded all expectations.

31. In early October of 2008, the Defendant John Motz directed Assistant Manager Roger Bradley to issue disciplinary notices (coachings) to the Plaintiffs Demean Daniels, Natasha Charles and Yolanda Olinger allegedly on the grounds of job performance related to delays in completing price changes. In accordance with Mr Motz's instructions, disciplinary

7

coachings were issued to Demean Daniels and Natasha Charles on October 8, 2008, and to Yolanda Olinger on October 10, 2008, by Mr. Bradley. Each of the disciplinary coachings were coordinated and instigated by Mr. Motz and were based on fabricated allegations. Each of the disciplinary coachings were motivated by retaliatory animus. The disciplinary coachings constituted second level "written coachings" for Natasha Charles and Yolanda Olinger, and a third level "d-day coaching" for Demean Daniels.

32. Upon information and belief, other employees, similarly situated, who have not engaged in protected oppositional conduct and who have in fact engaged in the conduct for which the Plaintiffs Daniels, Olinger and Charles were cited as described in the preceding paragraph have not been subjected to coachings or other forms of work place discipline.

33. On October 9, 2008, the Defendants terminated the employment of the Plaintiff Barbara Bully in retaliation for the protected activity described in paragraphs 16 through 21 above. The Defendant asserted that Ms. Bully's termination was justified because of unapproved absences that allegedly occurred on September 19, and 28, 2008, and on October 8, 2008. The allegation of unapproved absences was false and a pretext to justify the termination. Upon information and belief, other employees, similarly situated, who have not engaged in protected oppositional conduct and who actually did have as many or more alleged unapproved absences than Ms. Bully have not been subjected to coaching or other forms of work place discipline.

30. At the time of her termination, Barbara Bully's employment performance in her newly assigned position satisfied the legitimate work related expectations of the Defendants.

35. On October 28, 2008, the Defendants terminated the employment of the Plaintiff

Veronica Noeske in retaliation for the protected activity described in paragraphs 16 through 21 above. The Defendant asserted that Ms. Noeske's termination was justified because of alleged gross misconduct related to time theft and time record alteration. The allegations are false and are a fabricated pretext to justify the termination. The allegations were instigated by the Plaintiff John Motz with the assistance of the Defendant's department of Market Asset Protection for the sole and exclusive purpose of manufacturing a pretext for the termination of Ms. Noeske.

36. On November 4, 2008, the Defendants terminated the employment of the Plaintiff Demean Daniels in retaliation for the protected activity described in paragraphs 16 through 21 above. The Defendant asserted that Ms. Daniels' termination was justified because of an alleged failure to take a meal break before her sixth hour of work. The allegation of failing to take a required meal break was false and was a pretext to justify the termination. Upon information and belief, other employees, similarly situated, who have not engaged in protected oppositional conduct and who actually did fail to take a required meal break have not been subjected to coaching or other forms of work place discipline.

37. On November 13, 2008, the Plaintiff Yolanda Olinger received a third level discipline known as a "Decision Day coaching" on false and pretextual grounds related to misconduct for allegedly failing to respond to greeting of "good morning" from the Defendant John Motz. The Decision Day coaching was instigated by the Defendant John Motz, and co-manager James Jertson and was motivated by retaliatory animus. Upon information and belief, other employees, similarly situated, who have not engaged in protected oppositional conduct and who actually did have failed to return greetings from management personnel have not been

subjected to coaching or other forms of work place discipline.

38. On November 21, 2008, the Defendant John Motz terminated the employment of the Plaintiff Yolanda Olinger in retaliation for the protected activity described in paragraphs 16 through 21 above. The Defendant asserted that Ms. Olinger's termination was justified because a "witness" allegedly over heard a statement by Ms. Olinger that Assistant Manager Gary Batra "walks around with his hands in his pockets.". The allegation of the statement was false and a pretext to justify the termination. Upon information and belief, other employees, similarly situated, who have not engaged in protected oppositional conduct and who actually did make statements of the type alleged to have been made by Ms. Olinger have not been subjected to coaching or other forms of work place discipline.

### Section 1981 - Retaliation

i. This claim is brought individually by the Plaintiffs Dominica Thompson, Yolanda Olinger, Veronica Noeske, Demean Daniels, Natasha Charles, and Barbara Bully.

ii. The Plaintiffs incorporate and re-allege Paragraphs 1 through 38 of this Complaint as if set forth herein.

iii. By virtue of the foregoing conduct, Plaintiffs Dominica Thompson, Yolanda Olinger, Veronica Noeske, Demean Daniels, Natasha Charles, and Barbara Bully were subjected to retaliation in violation of 42 U.S.C. Sect. 1981, as a result of complaints of racially discriminatory conditions at Wal-Mart and as a result of their efforts to raise claims of discrimination against defendant, as stated herein. Wal-Mart has engaged in a pattern and practice of retaliating against African American employees who make complaints about racially discriminatory conditions at the regional level.

iv.  The aforementioned conduct undertaken by Wal-Mart and their agents and by John Motz as described herein has resulted in damages to these plaintiffs. The foregoing acts of Wal-Mart, their agents and employees, and John Motz were deliberate, intentional, willful, wanton and malicious and taken with reckless disregard to Plaintiffs' civil rights, thereby entitling Plaintiffs to punitive damages.

## PRAYER FOR RELIEF

v.  The Plaintiffs Dominica Thompson, Yolanda Olinger, Veronica Noeske, Demean Daniels, Natasha Charles, and Barbara Bully respectfully request that this Court:

a.  Enter a declaratory judgment finding and declaring that the Defendants have retaliated against them in violation of 42 U.S.C. §1981;

b.  Grant a permanent injunction enjoining Wal-Mart, its officers, successors, assigns and all persons in active concert or participating with them, from engaging in any employment practice which constitutes retaliation for complaints of race discrimination;

c.  Order Wal-Mart Stores, Inc., and Wal-Mart Stores East I, Limited Partnership to make the Plaintiffs whole by reinstating those Plaintiffs who have been unlawfully terminated and by providing such backpay and prejudgment interest as may be proven at trial and other affirmative relief necessary to eradicate the effects of unlawful employment practices;

d.  Order the Defendants to make the Plaintiffs whole by providing compensation for any past and future pecuniary losses resulting from the unlawful employment practices alleged herein;

e.  Order the Defendants to make the Plaintiffs whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices alleged herein, including humiliation, in amounts to be determined at trial;

f.  Order the Defendants to pay the Plaintiffs punitive damages for their malicious and reckless conduct alleged herein in amounts to be determined at trial;

g.  Award attorneys' fees and costs incurred in this action; and

h   Grant such other and further relief as this Court deems necessary and proper.

Dated at Milwaukee, Wisconsin, this 3rd day of May, 2011.

THE LAW OFFICE OF PETER EARLE
Attorneys for Plaintiff

By: _____
Peter Guyon Earle
WI SBN 1012176

Address:

839 North Jefferson Street
Suite 300
Milwaukee, WI 53202
(414) 276-1076

SOULE, BRADTKE & LAMBERT
Attorneys for the Plaintiffs
Jennifer Soule
James G. Bradtke
Kelly K. Lambert
James Griffin
155 North Michigan Avenue
Suite 500
Chicago, Illinois 60601
(312) 616-4422

MIDWEST LEGAL CENTER, LLC
Attorneys for the Plaintiffs
RL McNeely
W175N11163 Stonewood Drive
Suite 220
Germantown, WI 53022-6503
(262) 255-4015

12